# 95 DTA 175

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL II DE BAYAMON

O.C.G.
Peticionario

v.

DANIEL VAZQUEZ TORRES, DIRECTOR HOGAR JUVENIL DE HUMACAO
Demandado

Núm. KLRX-95-00004

San Juan, Puerto Rico, a 15 de junio de 1995

Panel integrado por su presidente, Juez Sánchez Martínez
y los Jueces Rodríguez de Oronoz y Segarra Olivero

Sánchez Martínez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El presente recurso cuestiona la resolución de 7 de marzo de 1995 dictada por el Tribunal de Primera Instancia, Sala Superior de Bayamón, Asuntos de Menores (Hon. Evelyn Hernández de Mártir, J.), que denegó una solicitud de egreso de un menor detenido preventivamente por varias faltas de asesinato, tentativa de asesinato e infracciones a la Ley de Armas. También impugna la determinación de 14 de marzo de 1995 hecha por el Tribunal de Primera Instancia, Subsección de Distrito, Sala de Bayamón, Asuntos de Menores (Hon. Carmen Rivera de Saldaña, J.) que en la vista preliminar, luego de determinar causa probable para presentar querella por nuevos casos de robo e infracciones a la Ley de Armas, ordenó la continuada detención preventiva del menor por las nuevas quejas. Por las razones que prosiguen, se confirman las resoluciones recurridas.

### I

Por hechos ocurridos el 14 de noviembre de 1994 en horas de la noche, se presentaron al día siguiente dos quejas contra el menor peticionario O.C.G. por infracción al Art. 15 de la Ley de Protección Vehicular, 9 L.P.R.A. sec. 3214 (poseer un vehículo hurtado), y una infracción al Art. 166 del Código Penal, 33 L.P.R.A. sec. 4272 (apropiarse de una tablilla perteneciente al vehículo de otra persona). Se ordenó el ingreso del menor. Al otro día, el menor presentó una moción en la que solicitó que se le pusiera en libertad bajo la supervisión de su madre mientras se ventilaba ese proceso. El tribunal accedió a la solicitud y ordenó su libertad *"bajo restricción domiciliaria"*. Minuta de 17 de noviembre de 1994██

Posteriormente, el 27 de diciembre de 1994, a eso de las 8:00 de la noche, el dueño de una gasolinera fue asesinado a tiros frente a su esposa e hijo y delante de un empleado y un cliente, cuando un individuo trataba de robarle el dinero que la víctima había devengado al cabo de su jornada de trabajo de ese día. El individuo también le disparó al hijo pero no logró herirlo porque el arma mascó la bala. A base de una confidencia y previa orden judicial, el 3 de enero de 1995 el menor O.C.G. fue sometido a una rueda de confrontación. Tanto el hijo como la esposa de la víctima, identificaron al menor peticionario como el autor de los hechos.

Ese mismo día, el tribunal determinó causa probable para su aprehensión y presentación de las correspondientes quejas contra el menor por las faltas de asesinato en primer grado en su modalidad de asesinato estatutario (felony murder), tentativa de asesinato, tentativa de

robo, Arts. 26, 83 y 173 del Código Penal, 33 L.P.R.A. sec. 3122, 4002 y 4279, e infracciones a los Arts. 6, 8 y 32 de la Ley de Armas, 25 L.P.R.A. secs. 416, 418 y 442. El tribunal ordenó su ingreso en el Centro de Detención de Menores por *"ser necesario para la seguridad del menor o porque éste representa un riesgo para la comunidad"*.

El 24 de enero de 1995, el menor presentó una moción para que se revisara la orden de detención provisional. La vista para discutir esta moción se celebró el 27 de enero de 1995. En dicha vista, el Ministerio fiscal presentó el testimonio de la trabajadora social, Sra. María A. Díaz, y la defensa presentó a la testigo Doris Rodríguez Nieves. El tribunal denegó el egreso del menor a base de la credibilidad que le merecieron los testigos presentados, según surge de la minuta de ese día. De ese dictamen nunca se recurrió ante nosotros.

El 8 de febrero de 1995, estando el menor peticionario detenido en una de las celdas de la oficina del alguacil mientras aguardaba por la vista adjudicativa de las querellas relativas a la posesión del vehículo y de la tablilla hurtados, éste fue identificado por una persona como uno de los sujetos que lo había asaltado en el estacionamiento de una tienda Radio Shack de Bayamón en la mañana del 14 de noviembre de 1994 (la misma fecha en que se le imputó al menor la referida posesión del vehículo y la tablilla hurtados). A base de dicha identificación, al día siguiente la Policía le sometió nuevas quejas por robo e infracciones a la Ley de Armas.■ El tribunal determinó causa probable para su aprehensión y ordenó su detención preventiva por las nuevas quejas.

El 2 de marzo de 1995, el menor peticionario presentó una nueva moción para que el tribunal dejara sin efecto la orden de detención provisional, ordenara su egreso y le permitiera permanecer en libertad supervisada por su madre. La vista de esta moción se celebró el 7 de marzo de 1995 ante la Hon. Evelyn Hernández de Mártir, J. La defensa presentó como testigos a la madrina y a la abuela del menor. El Ministerio Público no presentó prueba; es evidente que se limitó a contrainterrogar a los testigos de defensa y a argumentar las circunstancias del caso según las constancias de dicha prueba y del expediente judicial del menor. El tribunal denegó la moción.

El 14 de marzo de 1995, se celebró la vista preliminar de las faltas relativas al robo del empleado de Radio Shack. Al determinar causa probable para presentar las correspondientes querellas, la Hon. Carmen Rivera de Saldaña, J., ordenó que se mantuviera la detención preventiva del menor.

De ambas resoluciones es que el menor recurre ante nos con un recurso titulado *certiorari* y/o *Hábeas Corpus*. ■ Sin embargo, en su petición, el menor se limita a argumentar únicamente la resolución dictada el 7 de marzo de 1995 por la Hon. Evelyn Hernández de Mártir, J. El menor aduce que el tribunal incidió en error al denegar su moción de egreso pues él presentó *"prueba abundante de [su] no peligrosidad"* mientras que la Procuradora de Menores no presentó prueba alguna de refutación.

Emitimos orden al Procurador General para que expusiera su posición respecto al recurso y, en particular, sobre las circunstancias que justificaban ordenar la detención preventiva del menor. Este ha comparecido a través de escrito en el cual aporta otros hechos relevantes al caso, omitidos en la petición.

## II

El menor peticionario tituló su recurso de *certiorari* y/o *Hábeas Corpus* pero hemos acogido el mismo como *certiorari*. En *Ortiz Serrano v. González Rivera, Alcaide*, ___ D.P.R. ___ (1992), **92 J.T.S. 141**, a la pág. 10049, el Tribunal dispuso que *"por ser el [Hábeas Corpus] un remedio extraordinario su uso debe estar limitado a situaciones y casos verdaderamente excepcionales"*, razón por la cual, como regla general, *"tienen que agotarse*

*todos los remedios ordinarios disponibles antes de acudirse a este recurso".* El Tribunal añadió que *"salvo circunstancias excepcionales, no se concederá el auto de Hábeas Corpus en sustitución de la revisión apelativa".* Hemos examinado la totalidad del recurso y concluimos que el recurso de *certiorari* constituye, en las circunstancias de los hechos particulares de este caso, un remedio efectivo para revisar en alzada el error que se le imputa al tribunal *a quo.*

El Art. 20 de la Ley de Menores de Puerto Rico, 34 L.P.R.A. sec. 2220, establece que *" [n]o se ordenará la detención de un menor antes de la vista adjudicativa a menos que... [s]ea necesaria para la seguridad del menor o porque éste representa un riesgo para la comunidad".* El menor no plantea que esta disposición de ley sea inconstitucional. Su alegato implica más bien una cuestión de pura interpretación estatutaria como lo es si, ante los hechos probados, quedó establecido que, en efecto, la detención preventiva del menor peticionario es necesaria para garantizar su seguridad o la de la comunidad.

El peticionario alega que el tribunal *a quo* denegó su egreso aun cuando en la vista para revisar la orden de detención preventiva la Procuradora de Menores no presentó prueba de peligrosidad. Señala que la Procuradora sólo presentó el testimonio de la trabajadora social María A. Díaz, quien meramente declaró que no había hecho ninguna intervención ni tenía elementos de juicio para opinar sobre la peligrosidad del peticionario en ese momento. Aduce que la Procuradora, para justificar la prolongación de su detención preventiva, descansó en la naturaleza grave de las imputaciones hechas contra el menor *"y no en un estudio de perfiles sico-sociales, y a pesar de desprenderse del expediente múltiples violaciones de derechos que minimizan la posibilidad de una convicción".* Petición, a la pág. 5 (énfasis en el original).

El Procurador General aduce, por su parte, que se satisfizo la ley, en vista de que el menor --que se encontraba en libertad mientras esperaba por la celebración de la vista adjudicativa de la querella por la infracción al Art. 15 de la Ley de Protección Vehicular, *supra*-- mató a un ser humano sin que mediara provocación alguna; que no sólo le disparó a la víctima en una ocasión, sino que al ver que aún no había caído al piso, le disparó por segunda vez y no es sino hasta que el menor se percata de que el arma no funciona adecuadamente que abandona su empresa criminal y huye con sus cómplices.

La Regla 2.16 de las Reglas de Menores, 34 L.P.R.A. Ap.I-A, R. 2.16, establece que *"[e]n la vista se considerarán las diversas circunstancias pertinentes al egreso del menor y a tales efectos el tribunal escuchará al Procurador y examinará el informe preparado por el trabajador social".* Del texto de dicha regla no surge que el Procurador de Menores necesariamente tiene que presentar prueba. Sólo requiere que el Procurador exponga las circunstancias relacionadas con el egreso del menor. Esto puede hacerlo rebatiendo las circunstancias presentadas por el menor en su favor y haciendo referencia a la gravedad de las faltas imputadas y a las circunstancias que rodean la comisión de las mismas por el menor.

Aun cuando la Procuradora no presentó prueba adicional para justificar la detención del menor peticionario, sí rebatió la prueba presentada por éste mediante el contrainterrogatorio de los testigos de defensa. De ahí surgió que la madre del menor no tenía controles sobre su hijo y que los testigos presentados --la abuela materna y la madrina del menor-- no conocían realmente al menor, quien se dijo es un desertor escolar y un usuario de drogas y alcohol en grandes cantidades.

Es cierto que, según afirma el menor, la Regla 2.16 dispone que el tribunal *"examinará el informe preparado por el trabajador social".* También es cierto que en este caso no se preparó uno. Sin embargo, ante los hechos de este caso, no creemos que el sentido imperativo de la regla procesal exija el informe como una condición *sine qua non.* Habiendo llegado de otro modo a la atención del tribunal recurrido las circunstancias particulares que le permitían

apreciar el carácter del menor, dicho foro podía hacer una adjudicación del asunto sin necesidad del informe. El menor peticionario no ha alegado ni nos ha demostrado que la preparación y presentación de un informe social en este caso hubiese inducido probablemente al tribunal a tomar una decisión distinta.

El menor peticionario también sostiene que su detención preventiva infringe sus derechos constitucionales a la presunción de inocencia, a carearse con los testigos de cargo y a tener una adecuada asistencia de abogado. Sin embargo, no hemos encontrado en su petición aseveraciones específicas de hechos, ni fundamentos jurídicos apropiados, que nos permitan estimar los argumentos sobre las supuestas infracciones constitucionales.

Por otro lado, el alegado derecho del menor de permanecer bajo la custodia de sus padres mientras se resuelve la vista adjudicativa, no es un derecho constitucional. Es un derecho estatutario que no es absoluto. Está condicionado a *"siempre que fuere posible",* Art. 19 de la Ley de Menores, 34 L.P.R.A. sec. 2219, y sujeto a las excepciones establecidas en el Art. 20, supra.█

El menor afirma en su petición que él *"tiene unos padres responsables que han estado dispuestos en todo momento a asumir la responsabilidad de su custodia sin que el Procurador de Menores haya presentado al Tribunal una sola prueba de que dicho menor constituye un riesgo para la comunidad o para sí mismo".* Petición, a la pág. 13 (énfasis en el original). A esta aseveración sólo diremos que la experiencia demuestra lo contrario: que habiéndosele dado previamente al menor la oportunidad de permanecer en libertad en custodia de su madre *"bajo restricción domiciliaria",* existe una determinación judicial para sostener que el menor probablemente participó en un asalto a mano armada y asesinato a las 8:00 de la noche cuando se suponía que estuviese recogido en su casa. Esto demuestra que ni el control de *"unos padres responsables"* ni la imposición de la restricción domiciliaria fueron mecanismos eficaces para controlar y vigilar al menor y mucho menos para proteger la comunidad.

## II

Con estos antecedentes, se expide el auto solicitado y se confirma la resolución recurrida.

Notifíquese vía facsímil además de la vía ordinaria.

Lo acordó el Tribunal y lo certifica la señora Secretaria General.

María de la C. González Cruz
Secretaria General

### ESCOLIOS 95 DTA 175

1. Para resolver este recurso, tuvimos ante nos los autos originales del expediente J94-1961.

2. El peticionario cuestiona la forma en que el perjudicado en este caso hizo la identificación. Este señala que el 8 de febrero de 1995, mientras estaba en la celda de detención de menores de los alguaciles, se le permitió la entrada a dicha celda al perjudicado Angel Santiago Torres, quien reconoció al peticionario como uno de los sujetos que lo había asaltado el 14 de noviembre de 1994. El Procurador General por su parte señala que dicha identificación del menor ocurrió por casualidad. No fue que el perjudicado fuera llevado hasta ese lugar con el propósito de identificar al peticionario. El otro menor que acompañaba al peticionario fue aprehendido y se iniciaron los procedimientos en su contra. Una de las vistas celebradas contra dicho menor coincidió con una vista del peticionario. Ambos se encontraban en una celda localizada cerca de la oficina del alguacil. El testigo principal del caso tuvo que ir a esa oficina para solicitar una excusa para el trabajo por motivo de citación en el tribunal. Mientras estaba allí se percató de que la otra persona que lo asaltó se encontraba en la celda de

detenidos y así se lo informó al alguacil. Sobre esta identificación, nada tenemos que expresar. Si el menor peticionario está bajo la impresión de que su identificación fue sugerida por la Policía o los alguaciles del tribunal, tiene los mecanismos procesales apropiados para impugnarla.

3. El menor peticionario presentó también una moción en auxilio de jurisdicción que denegamos previamente mediante resolución de 23 de marzo de 1995.

4. El Art. 19 dispone como sigue:

*"Siempre que fuere posible, el menor deberá dejarse bajo la custodia de sus padres o de una persona responsable, bajo la promesa de que comparecerá con éste ante el Tribunal en fecha determinada.*

*En aquellos casos en que se deje al menor bajo la custodia de sus padres, encargados o persona responsable, éstos firmarán una promesa de comparecencia comprometiéndose a traer al menor a la vista del caso cuando el Tribunal lo ordene, ello bajo apercibimiento de desacato."*